UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                    Case No: 17-CV-

ICICI BANK LIMITED,
NEW YORK BRANCH,

                         Plaintiff,

        -against-

VISHAL DOSHI, APOORVA DOSHI,
NIHAR PARIKH, GURUDAS PATWARDHAN,
ALPESH PANCHAL, SHIRAJ DESHPANDE,
SANJAY SHAH, SHRIKRISHNA SANT,
HIREN SHAH, ATIT SHAH, and WANLU ZENG,

                         Defendants.

## VERIFIED COMPLAINT

Plaintiff ICICI BANK LIMITED, NEW YORK BRANCH ("Plaintiff"), by and

through its attorneys, Sabharwal & Finkel LLC, brings this Verified Complaint against

VISHAL DOSHI ("Vishal"), APPORVA DOSHI ("Apoorva"), NIHAR PARIKH

("Nihar"), GURUDAS PATWARDHAN ("Gurudas"), ALPESH PANCHAL ("Alpesh"),

SHIRAJ DESHPANDE ("Shiraj"), SANJAY SHAH ("Sanjay"), SHRIKRISHNA SANT

("Shrikrishna"), HIREN SHAH ("Hiren"), ATIT SHAH, ("Atit") and WANLU ZENG

("Wanlu"), (each a "Defendant", collectively, the "Defendants"), and states as follows:

## PARTIES

1.      Plaintiff, with offices located at 500 Fifth Avenue, 28th Floor, New York, NY

        10110, is the duly licensed New York branch of ICICI Bank Limited, a banking

        corporation incorporated under the laws of India, with headquarters located in

        Mumbai, India.

2.      Defendant Vishal is an individual resident in Mumbai, India. At all relevant times, Vishal was and is a control person of several related business entities engaged in a worldwide pattern of racketeering and fraudulent activity, including, but not limited to, Shrenuj & Co., Ltd., based in Mumbai, India ("Shrenuj"), Simon Golub & Sons, Inc., at all relevant times a 100% owned subsidiary of Shrenuj, based in Seattle, Washington and New York, NY ("SG"), Global Diamet FZE, based in the United Arab Emirates ("Global Diamet"), Glowing Star Diamonds LLC, based in the United Arab Emirates ("Glowing Star"), Sai Diamet FZE, based in the United Arab Emirates ("Sai Diamet"), Kenza Trading, based in the United Arab Emirates ("Kenza") (the latter four (4) collectively, the "UAE Shell Companies").

3.      Defendant Apoorva is an individual resident in Antwerp, Belgium. At all relevant times, Apoorva acted in concert and conspiracy with Vishal and the other Defendants to further the pattern of racketeering and fraudulent activity perpetrated by Defendants using Shrenuj, SG and the UAE Shell Companies as instrumentalities of their racketeering and fraudulent activities.

4.      Defendant Nihar is an individual resident in Mumbai, India. At all relevant times, Nihar was the de facto CEO of SG. At all relevant times, Nihar acted in concert and conspiracy with Vishal and the other Defendants to further the pattern of racketeering and fraudulent activity perpetrated by Defendants using Shrenuj, SG and the UAE Shell Companies as instrumentalities of their racketeering and fraudulent activities.

5.     Defendant Gurudas is an individual resident in Mumbai. At all relevant times, Gurudas acted in concert and conspiracy with Vishal and the other Defendants to further the pattern of racketeering and fraudulent activity perpetrated by Defendants using Shrenuj, SG and the UAE Shell Companies as instrumentalities of their racketeering and fraudulent activities.

6.     Defendant Alpesh is an individual resident in the United Arab Emirates. At all relevant times, Alpesh acted in concert and conspiracy with Vishal and the other Defendants to further the pattern of racketeering and fraudulent activity perpetrated by Defendants using Shrenuj, SG and the UAE Shell Companies as instrumentalities of their racketeering and fraudulent activities.

7.     Defendant Shiraj is an individual resident in Mumbai. At all relevant times, Shiraj acted in concert and conspiracy with Vishal and the other Defendants to further the pattern of racketeering and fraudulent activity perpetrated by Defendants using Shrenuj, SG and the UAE Shell Companies as instrumentalities of their racketeering and fraudulent activities.

8.     Defendant Sanjay is an individual resident in Mumbai. At all relevant times, Sanjay acted in concert and conspiracy with Vishal and the other Defendants to further the pattern of racketeering and fraudulent activity perpetrated by Defendants using Shrenuj, SG and the UAE Shell Companies as instrumentalities of their racketeering and fraudulent activities.

9.     Defendant Shrikrishna is an individual resident in Mumbai. At all relevant times, Shrikrishna acted in concert and conspiracy with Vishal and the other Defendants to further the pattern of racketeering and fraudulent activity perpetrated by

Defendants using Shrenuj, SG and the UAE Shell Companies as instrumentalities of their racketeering and fraudulent activities.

10. Defendant Hiren is an individual resident in Mumbai. At all relevant times, Hiren acted in concert and conspiracy with Vishal and the other Defendants to further the pattern of racketeering and fraudulent activity perpetrated by Defendants using Shrenuj, SG and the UAE Shell Companies as instrumentalities of their racketeering and fraudulent activities.

11. Defendant Atit is an individual resident in Mumbai and/or New York. At all relevant times, Atit acted in concert and conspiracy with Vishal and the other Defendants to further the pattern of racketeering and fraudulent activity perpetrated by Defendants using Shrenuj, SG and the UAE Shell Companies as instrumentalities of their racketeering and fraudulent activities.

12. Defendant Wanlu is an individual resident in Seattle, Washington. At all relevant times, Wanlu was the CFO of SG. At all relevant times, Wanlu acted in concert and conspiracy with Vishal and the other Defendants to further the pattern of racketeering and fraudulent activity perpetrated by Defendants using Shrenuj, SG and the UAE Shell Companies as instrumentalities of their racketeering and fraudulent activities.

## JURISDICTION AND VENUE

13. This Honorable Court has jurisdiction under 28 U.S.C. §1331, in that the Plaintiff's claims herein are based on violations by Defendants of 18 U.S.C §1961 et seq., the Racketeer Influenced and Corrupt Organizations Act ("RICO").

14. Venue is proper in this District under 28 U.S.C. §1391(b)(2). A substantial part of the events giving rise to Plaintiff's claims against Defendants occurred in this District.

## STATEMENT OF FACTS

### Preliminary Statement

15. The Defendants, acting in concert as co-conspirators, engaged in repeated RICO violations in a pattern of racketeering and fraudulent activities spanning the globe from India to the US to the United Arab Emirates.

16. In the commission of such racketeering and fraudulent activities, Defendants used Shrenuj, SG and the UAE Shell Companies as instrumentalities of their fraud, inducing Plaintiff to extend and maintain loan facilities to SG, then diverting such loan proceeds to themselves through Shrenuj and the UAE Shell Companies by means of a series of fraudulent transactions, spanning a time period from July 2, 2008 through May 31, 2016.

17. In the commission of such fraudulent activities, Defendants engaged in a series of acts constituting mail fraud (18 USC §1341), wire fraud (18 USC §1343), and bank fraud (18 USC §1344).

18. Defendants' fraudulent acts caused Plaintiff to suffer losses in excess of $12 million.

19. Defendants' acts constitute violations of the RICO statute, 18 U.S.C. § 1961, et seq., and constitute common law fraud under New York laws.

### The Credit Facilities, Default, Receivership and the Seattle Proceedings

20.   On or about July 2, 2008, Plaintiff as lender and SG as borrower entered into a credit facility agreement, which agreement was amended and restated from time to time through and including February 15, 2013, whereby Plaintiff agreed, as of February 15, 2013, to extend certain revolving credit and letter of credit facilities to SG up to a maximum principal amount of Twenty Million Dollars ($20 Million), consisting of two facilities, a letter of credit facility up to $5 million (the "LOC Facility") and a revolving credit facility up to $15 million (the "Revolving Credit Facility") (collectively, the "Facilities").

21.   As of February 15, 2013, the original maturity date of the Facilities was November 30, 2013. From time to time Plaintiff allowed SG to extend the maturity date of the Facilities. There were four (4) such amendments, the most recent of which extended the maturity date to June 26, 2016.

22.   As of May 23, 2016, SG owed an aggregate of $18,807,084.31 to Plaintiff, of which $3,653,798.68 was owed by SG to Plaintiff under the LOC Facility and $15,154,285.63 under the Revolving Credit Facility (the "SG Obligations").

23.   In or about May 2016, based on financial statements provided to Plaintiff by SG, it became apparent to Plaintiff that SG was unable to pay the SG Obligations.

24.   Plaintiff accordingly commenced proceedings in Seattle, Washington on May 31, 2016 for the appointment of a Receiver. *ICICI Bank Limited, New York Branch v. Simon Golub & Sons, Inc.*, King County Superior Court, Case Number 16-2-1284-6 (the "Seattle Receivership Proceedings").

25.     In the course of the Seattle Receivership Proceedings, the Receiver discovered numerous instances of fraud and fraudulent conveyances by SG to certain third parties.

26.     As a result, on August 25, 2016, Plaintiff commenced additional proceedings in Seattle against such third parties as defendants, and additional third parties have been added to such proceedings from time to time. *ICICI Bank Limited, New York Branch v. IJ Creations, LLC, et al.*, King County Superior Court, Case Number 16-2-20541-1 (the "Seattle Third Party Proceedings"), which have now been settled against such third parties. The claims in the Seattle Third Party Proceedings included claims for fraudulent conveyances of SG brand names and business opportunities.

27.     None of the defendants in either the Seattle Receivership Proceedings or the Seattle Third Party Proceedings are defendants in the instant proceedings, except for Nihar, who has been named in the Seattle Third Party Proceedings on separate and distinct grounds.

28.     The Seattle Receivership Proceedings have thus far yielded to Plaintiff a portion of the SG Obligations.

29.     The Seattle Third Party Proceedings have resulted in Plaintiff recovering a portion of the SG Obligations.

## The Receiver's Findings; The Loose Diamonds Fraud

30.     In the course of the Seattle Receivership Proceedings, the Receiver also made several other findings that form the basis for the instant proceedings before this

Honorable Court. The Receiver's Preliminary Forensic Report dated October 3, 2017 is attached hereto as Exhibit A.

31.    The Receivers' findings, as relevant to the instant proceedings, are set forth below.

32.    The Defendants, acting in their individual capacities, in concert as co-conspirators, perpetrated two types of fraud constituting a pattern of racketeering activity … a letter of credit fraud in the amount of $3,653,798.68 ("LC Fraud") and a borrowing base fraud in the amount of $15,154,285.63 less the recovery made by the Receiver in the Receivership Proceedings, and the recovery made by Plaintiff in the Seattle Third Party Proceedings ("Borrowing Base Fraud") (collectively, the "Loose Diamonds Fraud").

33.    SG had two lines of business. One line consisted of selling finished jewelry to independent domestic (US) stores, which included certain brands such Caro 74, Valina and Colore Brands, and the Simon Golub Collection.

34.    The other business was brokering loose diamonds (the "Loose Diamonds Business"). The Loose Diamonds Business was a separate and independent business at SG.

35.    This separate Loose Diamonds Business did not involve any SG employees, other than Wanlu acting on direct instructions, on the Loose Diamonds Business, from the other Defendants.

36.    The Loose Diamonds Business, and the resulting Loose Diamonds Fraud, was controlled by the Defendants, acting in their individual capacities, in concert as co-conspirators, from overseas … from India, from Belgium and from the United

Arab Emirates, using Wanlu, SG's New York office, and the UAE Shell Companies as instrumentalities for their fraudulent, racketeering activities.

37.    **The LC Fraud** consists of four (4) letters of credit aggregating $3,653,798.68 (the "Letters of Credit").

38.    Using SG as an instrumentality of their fraud against Plaintiff, and with the use of mails and wires, Defendants fraudulently induced the Plaintiff to extend the Letters of Credit to SG for transactions related to SG's Loose Diamonds Business. The applications for the Letters of Credit are attached hereto as Exhibit ___.

39.    In each of these Letters of Credit aggregating $3,653,798.68, Sai Diamet (one of the UAE Shell Companies) was the beneficiary as the purported supplier of loose diamonds to SG.

40.    As beneficiary of the Letters of Credit, Sai Diamet received $3,653,798.68 in the period September 4, 2015 to October 13, 2015, in exchange for loose diamonds, which were delivered to SG.

41.    The diamonds from these "purchases" from Sai Diamet were shipped to SG's New York office. Once the diamonds arrived, Defendant Sanjay gave directions via email to Wanlu to record invoices for the "sale" of these diamonds. These invoices were sent by Sanjay via email to Wanlu in excel files.

42.    The loose diamonds were then purportedly sold by SG to Kenza Trading (another of the UAE Shell Companies), Shrenuj (one "sale" each) and Glowing Star (another of the UE Shell Companies)(two "sales").

43.     The Defendants control SG, Kenza Trading, Shrenuj, Glowing Star and Sai Diamet, and, as a result, the flow and trade of these loose diamonds was completely controlled by the Defendants, acting in their individual capacities.

44.     The four (4) Letters of Credit were never paid by SG to the Plaintiff, and no recovery has been had thereon.

45.     The Defendants engaged in the aforementioned shell game so as to extract the proceeds, as well as the diamonds, which were the subject of the Letter of Credit transactions in the LC Fraud. As a result, SG failed to repay sums due to the Plaintiff under the Letters of Credit.

46.     **Following the money, and the diamonds**: Sai Diamet received $3,653,798.68 as beneficiary of the Letters of Credit.

47.     The diamonds were "sold" by Defendants (a) to Glowing Star, in the amount of $2,031,404 (b) to Kenza Trading, in the amount of $666, 353 and (c) to Shrenuj, in an amount of $956,042.

48.     Neither Glowing Star, nor Kenza Trading, nor Shrenuj paid SG for these loose diamonds.

49.     In SG's books, Glowing Star owes SG $15,541,484.

50.     In SG's books, Kenza Trading owes SG $16,385,610.

51.     Sai Diamet, Glowing Star and Kenza Trading are UAE Shell Companies. They no longer exist.

52.     The Receiver in the Seattle Receivership Proceedings has reported as follows: "The Receiver performed a preliminary inspection of Simon Golub's books and documentation related to the Loose Diamond Sales to overseas customers

[Glowing Star, Kenza Trading, Global Diamet, Sai Diamet] and noted that there is no useful customer contact information available. The Receiver diligently pursued contact information for these customers but has not been able to obtain accurate contact information or connect with an appropriate contact for the overseas customers to discuss the balances due and timing of payment. The Receiver engaged a collection specialist to locate the customers and collect the balances. That specialist was unable to contact any of the customers. As of the date of this report [October 3, 2017] the Receiver has made zero collections on the customer accounts related to the $36.8 million of net A/R derived from the purported Loose Diamond Sales. The Receiver does not expect any future collections related to the Loose Diamond Sales." Exhibit A, page 4.

53.     The diamonds have disappeared with the disappearance of Glowing Star and Kenza Trading.

54.     Shrenuj is in receivership in India, with little or no prospect of recovery from the inventory and receivables for the Plaintiff. Thus whatever diamonds went to Shrenuj essentially disappeared into a black hole.

55.     The money paid by Plaintiff to Sai Diamet, in the amount of $3,653,798.68 pursuant to the LOC Facility, has disappeared with Sai Diamet.

56.     Further, Glowing Star and Kenza Trading are not only shell companies, they are also companies related to SG.

57.     Similarly, Sai Diamet is not only a shell company, it is also related to Shrenuj.

58.     Such relationships were concealed by Defendants, fraudulently inducing Plaintiff to issue the four (4) Letters of Credit aggregating $3,653,798.68.   It was

specifically acknowledged in an undertaking from SG to ICICI at the time of issuance of each LC, stating that the LCs were not opened for the benefit of affiliated companies.

59. **The Borrowing Base Fraud**: This consists of Defendants, through SG, presenting, by the use of mails, to the Plaintiff certain Borrowing Base Certificates which included receivables from three of the UAE Shell Companies, that is, Glowing Star, Kenza Trading and Global Diamet. A summary and analysis of Borrowing Base Certificates is attached hereto as Exhibit B.

60. The receivables included in the Borrowing Base Certificates for these UAE Shell Companies were based on the Loose Diamonds Business. As noted above, the Loose Diamonds Business was controlled by the Defendants.

61. Based on these Borrowing Base Certificates, Plaintiff was fraudulently induced by Defendants to keep open the Revolving Credit Facility for SG. Had Plaintiff known that any of (a) the receivables were from shell companies or (b) the receivables were from related parties, Plaintiff would have discontinued the Revolving Credit Facility, and would not have suffered losses.

62. The Defendants used the Revolving Credit Facility to purchase loose diamonds. They then "sold" the loose diamonds to the UAE Shell Companies. The diamonds disappeared. All that was left were uncollectible receivables from the UAE Shell Companies, and SG unable to pay its Obligations to the Plaintiff.

63. As noted above, SG's uncollectible receivables consist primarily of receivables from the UAE Shell Companies, namely, Glowing Star ($15,541,484), Kenza Trading ($16,385,610) and Global Diamet ($5,035,738).

64.    **Following the money, and the diamonds**: The funds borrowed from the Bank were used by Defendants to purchase loose diamonds from related parties. The loose diamonds were then "sold" to Glowing Star, Kenza Trading and Global Diamet.

65.    Glowing Star, Kenza Trading and Global Diamet did not pay SG, and then disappeared. Thus the Bank's money was converted into diamonds by the Defendants by sending borrowed funds to related parties, and the diamonds disappeared into these UAE Shell Companies.

## Defendant's Racketeering and Fraudulent Activities at Other Locations

66.    Upon information and belief, Defendants have engaged in similar racketeering and fraudulent activities with other Branches of Plaintiff, in India, in Honk Kong, in Belgium and in the United Arab Emirates.

### AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION
### (Violations of Federal RICO, 18 U.S.C. §1962(c)
### Against All Defendants)

67.    Plaintiff repeats and re-alleges paragraphs 1 through __ above as though set forth in full herein.

68.    At all relevant times, the Plaintiff was a "person" within the meaning of RICO, 18 U.S.C. §§ 1961(3) & 1964(c).

69.    At all relevant times, each Defendant was a "person" within the meaning of RICO, 18 U.S.C. §§ 1961(3) & 1962(d).

70.    Defendants formed an association-in-fact for the purpose of defrauding the Plaintiff, comprised of themselves, the UAE Shell Companies and SG. This association-in- fact was an "enterprise" within the meaning of RICO, 18 U.S.C. §

1961(4). Defendants organized their RICO enterprise into a continuing and cohesive unit with specific and assigned responsibilities. All Defendants participated in the operation and management of the enterprise. At all relevant times, this enterprise was engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. § 1962(c).

71.     Defendants engaged in an elaborate and purposeful scheme to defraud the Plaintiff, a financial institution, using wires and mails. Each Defendant, by engaging in the acts set forth above, conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. § 1961(1) & (5), in violation of RICO, 18 U.S.C. § 1962(c).

72.     In various transactions with Plaintiff (the LC Fraud and the Borrowing Base Fraud) the Defendants systematically submitted to Plaintiff fraudulent misrepresentations of fact regarding their financial status and borrowing base via email so as to induce the Plaintiff to lend money to SG and/or to issue Letters of Credit to Sai Diamet, which loans and letters of credit were funded through wire transfers.

73.     Each mailing or wire in furtherance of the scheme is a separate offense, sufficient to establish an independent RICO predicate.

74.     The scheme relied upon affirmative acts of concealment, including misrepresentations and the U.S. mails and wires were the principal means through which Defendants finalized their transactions with the Bank and received their ill-gotten gains.

75.     The scheme was executed in, targeted assets within, and was effectuated by the transfers of funds to and through New York City (among other jurisdictions worldwide), and the shipment of goods to, and from, New York City.

76.     Defendants, on multiple occasions, and in furtherance of their scheme to defraud and to obtain money by means of false and fraudulent pretenses, knowingly caused to be sent and across state lines wire transfers of money. These acts constituted violations of the federal mail fraud statute, 18 U.S.C. § 1341.

77.     Defendants, on multiple occasions and in furtherance of their scheme to defraud and to obtain money by means of false and fraudulent pretenses, knowingly caused to be transmitted, by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures, and sounds, in violation of the federal wire fraud statute, 18 U.S.C. § 1343. Each false claim Defendants made was transmitted by means of wire communication in interstate or foreign commerce and constituted a separate violation of 18 U.S.C. § 1343, and a separate act of racketeering.

78.     Defendants also knowingly caused to be transmitted, by means of wire communication in interstate or foreign commerce, false statements to the Plaintiff. All of these acts constituted separate violations of 18 U.S.C. § 1343.

79.     Each Defendant committed and/or aided and abetted the commission of two or more of these racketeering acts in violation of 18 U.S.C. §§ 1341 and 1343. In fact, Defendants' racketeering acts were and are multiple, repeated, and continuous.

80.     Over the course of their relationship with the Plaintiff, Defendants repeatedly engaged in acts indictable under 18 U.S.C. §§1341 (mail fraud), 1343 (wire fraud), 1344 (bank fraud).

81.     These multiple racketeering acts were related and constituted a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5). The Defendants' plan had a common victim (the Plaintiff and other similar financial institutions), common goals (fraudulently obtain and continue eligibility of credit facilities), common methods (shell companies, sham transfers and intentional misrepresentations of fact through the borrowing base certificates), and the common result of defrauding the Plaintiff, and other financial institutions, and of enriching Defendants while concealing their fraudulent activities. The pattern of racketeering activity continues to date.

82.     The Defendants' acts related to each other as part of a common plan—to exploit the SG relationship with the Plaintiff so as to systematically, and fraudulently, obtain credit facilities for SG, an entity under their control, siphon away loan proceeds, and then conceal that fraudulent activity.

83.     Defendants have conducted their fraudulent affairs as an illegal international enterprise in violation of 18 U.S.C. §1961 et seq.

84.     Defendants have intentionally worked in concert to perpetrate a fraud on Plaintiff, intending to use, and actually using, interstate mail and wire communications as proscribed by 18 U.S.C. §§1341 and 1343.

85.     Defendants have intentionally worked in concert to defraud Plaintiff, a financial institution, as proscribed by 18 U.S.C. §1344.

86.     Defendants' intended purpose in participating in the illegal enterprise was to enrich themselves at the expense of Plaintiff.

87.     Defendants' pattern and repeated acts of fraud constitute a pattern of racketeering activity.

88.     Defendants' pattern and repeated acts of fraud pose a threat of continued criminal activity.

89.     Defendants' racketeering activities have caused damages to Plaintiff.

90.     Pursuant to 18 U.S.C. § 1964(c), the Plaintiff is entitled to recover threefold its damages plus costs and attorneys' fees.

## AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION
### (Conspiracy to Violate Federal RICO, 18 U.S.C. §1962(d) Against All Defendants)

91.     Plaintiff repeats and re-alleges paragraphs 1 through __ above as though set forth in full herein.

92.     At all relevant times, the Plaintiff was a "person" within the meaning of RICO, 18 U.S.C. §§ 1961(3) & 1964(c).

93.     At all relevant times, each Defendant was a "person" within the meaning of RICO, 18 U.S.C. §§ 1961(3) & 1962(d).

94.     Each Defendant was associated with the enterprise and agreed and conspired to violate 18 U.S.C. § 1962(c), that is, agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through the pattern of racketeering activity described herein, in violation of 18 U.S.C. § 1962(d).

95.     Defendants committed and caused to be committed a series of overt acts in furtherance of the conspiracy and to affect the objects thereof, including but not limited to the acts set forth above.

96.     The Plaintiff was directly and proximately injured by Defendants' pattern of racketeering activity. As a result of their misconduct, Defendants are liable to the Plaintiff for these injuries.

97.     Pursuant to 18 U.S.C. § 1964(c), the Plaintiff is entitled to recover threefold its damages plus costs and attorneys' fees.

## AS AND FOR PLAINTIFF'S THIRD CAUSE OF ACTION
### (Common Law Fraud – LC Fraud
### Against All Defendants)

98.     Plaintiff repeats and re-alleges paragraphs 1 through __ above as though set forth in full herein.

99.     The Defendants controlled SG through Defendant Wanlu.

100.    Using SG, the Defendants made a misrepresentation to the Plaintiff of a material fact, knowing such fact to be false … that Sai Diamet was an unrelated entity from which unrelated entity SG was "purchasing" loose diamonds.

101.    Defendants made this misrepresentation so as to induce Plaintiff to issue letters of credit in favor of Sai Diamet as beneficiary.

102.    The Plainitff relied to its detriment on Defendants' misrepresentation, issued the four (4) Letters of Credit favoring Sai Diamet as beneficiary.

103.    Documents reflecting sales of loose diamonds from Sai Diamet to SG were presented to the Plaintiff.

104.  The Plaintiff paid Sai Diamet a total of $3,653,798.68 on the four (4) Letters of Credit.

105.  Sai Diamet was one of the UAE Shell Companies.

106.  Sai Diamet subsequently disappeared, along with the Plaintiff's funds paid to Sai Diamet pursuant to the Letters of Credit.

107.  SG "sold" the loose diamonds to other related parties … Glowing Star, Kenza Trading and Shrenuj, all UAE Shell Companies.

108.  The diamonds also disappeared into Shrenuj and into these UAE Shell Companies.

109.  The Defendants, utilizing both SG, Shrenuj, and the UAE Shell Companies as instrumentalities, engaged in a shell game, through a series of illusory transactions, craftily designed to divert the money and the diamonds out of the Plaintiff's reach.

110.  First Defendants used SG to exercise SG's rights under the Letter of Credit Facility, fraudulently causing the Plaintiff to transfer funds to Sai Diamet (one of the UAE Shell Companies) in furtherance of a purported diamond "purchase" by SG.

111.  Then, in order to remove the diamonds from SG, the Defendants used Glowing Star and Kenza Trading (two more UAE Shell Companies) and Shrenuj to place purchase orders with SG for the same diamonds.

112.  After SG shipped the diamonds to Glowing Star and Kenza Trading, those entities defaulted on their obligations to pay for the diamonds, and have disappeared. And SG defaulted on the Letter of Credit Facility.

113.   The diamonds "sold" to Shrenuj also disappeared out of the Bank's reach because Shrenuj is in receivership in India.

114.   As a result of the wilful false representations made by Defendants to the Plaintiff and the Plaintiff's justifiable reliance on such false representations, the UAE Shell Companies received all of the funds and most of the diamonds, with Shrenuj receiving the remaining diamonds.

115.   All the funds and all the diamonds were placed by Defendants out of the Plaintiff's reach.

116.   The Plaintiff was left with nothing but $3,653,798.68 in losses.

## AS AND FOR PLAINTIFF'S FOURTH CAUSE OF ACTION
### (Common Law Fraud – Borrowing Base Fraud
### Against All Defendants)

117.   Plaintiff repeats and re-alleges paragraphs 1 through __ above as though set forth in full herein.

118.   The Defendants, in order to induce Plaintiff to extend the Revolving Credit Facility, submitted, or caused to be submitted, falsified Borrowing Base Certificates to Plaintiff, which referenced various fictitious transactions with the UAE Shell Companies, so as to create the illusion that SG satisfied the Plaintiff's lending criteria and, was, thus, qualified to continue to borrow $15 million.

119.   In reliance upon the falsified Borrowing Base Certificates, Plaintiff continued the Revolving Credit Facility to SG. The funds borrowed from the Bank were used by Defendants to purchase loose diamonds. The loose diamonds were then "sold" to Glowing Star, Kenza Trading and Global Diamet.

120.   Glowing Star, Kenza Trading and Global Diamet did not pay SG.

121.    Glowing Star, Kenza Trading and Golbal Diamet cannot be found.

122.    Thus, as a result of the false representations made by Defendants to Plaintiff and the Plaintiff's justifiable reliance on such false representations, Plaintiff's money was converted into diamonds by the Defendants, and the diamonds disappeared into these UAE Shell Companies, leaving the Bank with more than $15 million in bad debt.

## AS AND FOR PLAINTIFF'S FIFTH CAUSE OF ACTION
### (Aiding and Abetting a Fraud
### Against All Defendants)

123.    Plaintiff repeats and re-alleges paragraphs 1 through __ above as though set forth in full herein.

124.    Each Defendant intentionally provided substantial assistance to the others in advancing the fraud against the Plaintiff.

125.    Each Defendant either directed SG, or endorsed the direction of SG to fraudulently divert the proceeds from the various credit facilities specified above, and convert those proceeds for their own private use.

126.    Each defendant either directed the submission, or endorsed the submission of falsified Borrowing Base Certificates to the Plaintiff, which referenced various fictitious transactions with the UAE Shell Companies, so as to create the illusion that SG satisfied the Plaintiff's lending criteria and, was, thus, qualified to continue to borrow $15 million.

127.    All Defendants knowingly hid the fraud from the Plaintiff, by omitting to inform the Plaintiff of the fraud.

128.    Defendants could not have perpetrated and expanded their fraud without the substantial and material assistance of each other Defendant. Each Defendant benefited from the success of the fraud.

129.    All Defendants had actual knowledge of, and substantially assisted in, the fraudulent scheme.

130.    As a result of Defendants' conduct, Plaintiff has suffered significant injury.

## AS AND FOR PLAINTIFF'S SIXTH CAUSE OF ACTION
### (Unjust Enrichment
### Against All Defendants)

131.    The Defendants made false representations and material omissions in fraudulently seeking the various credit faciliites set forth herein above.

132.    As a result of these false representations and material omissions, Defendants wrongfully obtained a monetary benefit to which they were not legally entitled.

133.    Each individual Defendant personally benefitted as a result of the additional profits the Defendants reaped as a result of the LC Fraud and the Borrowing Base Fraud.

134.    Defendants have no right to retain these unjust gains.

135.    If Defendants are permitted to keep this monetary benefit, it would be manifestly unjust.

136.    Defendants have been unjustly enriched at the Bank' s expense in violation of the common law of New York and elsewhere.

WHEREFORE, Plaintiff requests this Honorable Court:

To enter Judgment on Plaintiff's First Cause of Action in an amount not less than $12 million., plus interest, costs, attorneys' fees and treble damages under 18 USC §1964(c);

To enter Judgment on Plaintiff's Second Cause of Action in an amount not less than $12 million plus interest, costs, attorneys' fees and treble damages under 18 USC §1964(d);

To enter Judgment on Plaintiff's Third Cause of Action in an amount not less than $4 million,, plus interest, costs and attorneys' fees;

To enter Judgment on Plaintiff's Fourth Cause of Action in an amount not less than $8 million, plus interest, costs and attorneys' fees;

To enter Judgment on Plaintiff's Fifth Cause of Action in an amount not less than $12 million, plus interest, costs and attorneys' fees;

To enter Judgment on Plaintiff's Sixth Cause of Action in an amount not less than $12 million, plus interest, costs and attorneys' fees;

And issue such other relief to Plaintiff as the Court deems just and equitable in the premises.

Dated: New York, New York
September 28, 2018

SABHARWAL & FINKEL, LLC

By:_____

Rohit Sabharwal (RS-7468)
*Attorneys for Defendant*
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: (561) 702-9930
Fax: (212) 289-2296
Email: rohit@sabilaw.com

23

## VERIFICATION

STATE OF NEW YORK              )
                                )
COUNTY OF NEW YORK             )

PERSONALLY appeared before me Akashdeep Sarpal, who, after being duly sworn, deposes and says that he is the Country Head USA of ICICI Bank Limited, New York Branch, 500 Fifth Avenue, New York, NY 10110 (the "Bank"), Plaintiff in the foregoing Complaint, and as such, that he has read the allegations contained therein and knows the same to be true based on the Bank's records, and to the best of his own knowledge, belief and information.

Name: AKASHDEEP SARPAL
Title: COUNTRY HEAD-USA

SWORN TO AND SUBSCRIBED before me on
this 2̶8̶ day of A̶u̶g̶u̶s̶t̶, 2018
           September

Notary Public for _____
My Commission Expires: _____

DARIEN G. LEUNG
Notary Public, State of New York
No. 02LE6088206
Qualified in Kings County
Commission Expires March 03, 20___
              March 7, 2020

24